United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDRE LAVAR WELLS, | ) Case No.: 5:11-CV-03294 LHK |
| Petitioner, | ) |
| | ) |
| v. | ) ORDER DENYING PETITION FOR |
| | ) WRIT OF HABEAS CORPUS; |
| GARY SWARTHOUT, Warden, | ) DENYING CERTIFICATE OF |
| | ) APPEALABILITY |
| Respondent. | ) |
| | ) |
| | ) |

Petitioner Andre Lavar Wells ("Petitioner"), a state prisoner in the custody of Gary

Swarthout ("Respondent"), Warden of California State Prison, Solano, petitions this Court for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1 ("Petition").  As grounds for

habeas relief, Petitioner claims that: (1) he was deprived of his rights to due process and to present

a defense when the California Superior Court for the County of Santa Clara instructed the jury not

to consider testimony from Petitioner's expert witness for the purposes of determining whether

Petitioner acted in the heat of passion; (2) the jury instruction regarding provocation for voluntary

manslaughter was erroneous and prejudicial; (3) Petitioner was deprived of his right to present a

defense when the Trial Court refused to instruct the jury on imperfect self-defense; (4) the

prosecution committed misconduct; (5) Petitioner received ineffective assistance of counsel

because trial counsel failed to object to certain misstatements of the law by the prosecutor; (6)

1

1    Petitioner received ineffective assistance of counsel because trial counsel failed to make an

2    adequate offer of proof with respect to the admission of statements Petitioner made to the police;

3    and (7) cumulative prejudice requires habeas relief.  Having considered the parties' submissions

4    and the relevant law, the petition is DENIED for the reasons set forth below.

5    **I.  Factual Background[1]**

6       **A.  The Altercation with Mr. Reyes**

7          On the afternoon of May 21, 2006, Eddie Reyes ("Mr. Reyes"), First Name Unknown

8    Bulmaro, James Campbell, Isaac Armenta, and Jessica Gonzalez were visiting Joseph Miller ("Mr.

9    Miller") and his girlfriend, Brenda Cabrera ("Ms. Cabrera"), at Mr. Miller and Ms. Cabrera's

10   apartment.  Answer, Ex. D ("Court of Appeal Opinion") at 2.  Mr. Miller's apartment was located

11   below the apartment Petitioner shared with his mother.  *Id.*  At some point, the five men in the

12   group went outside, leaving the two women and two children in the living room of the apartment.

     *Id.*

13        While the men were outside, Petitioner approached the men, and the group started making

14   fun of Petitioner. *Id.*  Petitioner became irate.  *Id.*  Petitioner called Mr. Reyes a "spick" and other

15   racist names.  *Id.*  Mr. Reyes asked where Petitioner was from and whether there were a lot of

16   "Sureños" where Petitioner was from.  *Id.*  The latter question upset Petitioner.  *Id.*  According to at

17   least one witness, all the men in the group were "Norteños."  *Id.*  Mr. Reyes then asked if Petitioner

18   had ever heard of "33rd Street," to which Petitioner replied that he had not.  *Id.*  Mr. Reyes took

19   Petitioner's reply as a sign of disrespect and called Petitioner a "bitch."  *Id.*  Mr. Reyes then pushed

20   Petitioner on his upper chest, causing Petitioner to stagger backwards down some steps.  *Id.*

21   According to one of the men in the group, Mr. Reyes challenged Petitioner to a fight.  *Id.* at 3.

22   Petitioner declined and walked away appearing frightened, embarrassed, angry, and emotional.  *Id.*

23   As Petitioner walked away, the group of men laughed at Petitioner.  *Id.*

24        After Petitioner left, the group of men returned to Miller's apartment and went into the back

25   bedroom while the women and children stayed in the living room.  *Id.*  Approximately ten to

26

27   ───────────────

     [1] The facts of this case are taken from the California Court of Appeal's unpublished opinion in

28   *People v. Wells*, No. H033524, 2010 WL 2633922 (Cal. Ct. App. June 30, 2010).  Answer, Ex. D.

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

United States District Court
For the Northern District of California

1    twenty minutes later, Petitioner knocked on the door.  *Id.*  Ms. Cabrera answered the door.  *Id.*

2    According to Ms. Cabrera and another witness, Jessica Gonzalez, who was in the living room with

3    Ms. Cabrera, Petitioner appeared "normal," not mad.  *Id.*  Ms. Cabrera called for Mr. Reyes.  *Id.*

4    Mr. Reyes came out of the back bedroom.  *Id.*  As Mr. Reyes exited the bedroom, he was talking

5    on his cellphone.  *Id.*  As Mr. Reyes walked into the hallway, Ms. Cabrera heard the click of a

6    knife being opened.  *Id.*  Petitioner ran towards Mr. Reyes and started stabbing Mr. Reyes.  *Id.*  Ms.

7    Cabrera screamed, and the men in the group ran out of the bedroom.  *Id.*  Mr. Miller testified that,

8    when he emerged from the bedroom, he saw Petitioner holding a triangular-shaped shank in his

9    hand.  *Id.*  Mr. Miller testified that Petitioner looked as if he had done something he regretted.

10   After the group emerged from the bedroom, Petitioner then ran from the apartment.  *Id.*

11        Mr. Reyes was taken to the hospital where he died at approximately 9:00 p.m. from

12   "multiple sharp force injuries."  *Id.* at 4.

13        **A.  Expert Testimony from Dr. Karen Froming**

14        Petitioner did not testify at trial.  *Id.*  However, the defense did provide testimony from Dr.

15   Karen Froming ("Dr. Froming"), an expert witness in neuropsychology.  *Id.*  Dr. Froming

16   reviewed: (1) the preliminary hearing transcript in the case; (2)  Petitioner's school and jail

17   treatment records; (3) a video of Petitioner's police interview conducted seven to eight hours after

18   the stabbing; (4) Petitioner's treatment records from a mental health program in which Petitioner

19   participated; (5) anecdotal evidence regarding Petitioner's family history; and (6) anecdotal

20   evidence showing that Petitioner suffered head injuries.  *Id.*  Dr. Froming also conducted her own

21   interviews and tests on Petitioner in April and May 2007.  *Id.*

22        At trial, Dr. Froming opined that Petitioner suffered from bipolar affective disorder.  *Id.*

23   Dr. Froming explained that Petitioner's bipolar disorder impaired Petitioner's ability to perceive

24   the environment correctly and caused Petitioner to "misperceive what was being said or how it was

25   being said."  *Id.* at 4-5.  Dr. Froming stated that Petitioner suffered from "impairment in several

26   areas, including central auditory processing, paying attention, processing speed, verbal memory,

27   and abstract reasoning and problem solving."  *Id.*.  Dr. Froming further opined that the types of

28

3

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

1   defects from which Petitioner suffered could cause paranoia, and that Petitioner's defects could

2   interfere with the quality of reflection in which Petitioner engages before making a decision. *Id.* at

3   5. Dr. Froming also stated that Petitioner might engage in aggressive behavior out of "fear,

4   paranoia, failure to properly assess a situation, or in response to an actual threat." *Id.*

5           Nevertheless, Dr. Froming concluded that Petitioner was not schizophrenic, had never

6   hallucinated or heard voices, and was not mentally retarded, but had an average IQ score. *Id.* at 4-

7   5. She further testified that Petitioner was able to engage in goal-directed behavior and that,

8   despite Petitioner's impairments, he could "engage in a violent attack out of revenge." *Id.*

9   **II. Procedural History**

10          Petitioner was tried for Mr. Reyes' murder in the Superior Court of California for Santa

11  Clara County ("Trial Court"). The jury found Petitioner guilty of first degree murder with an

12  enhancement for personal use of a weapon. Court of Appeal Opinion at 1. Accordingly, the Trial

13  Court imposed a sentence of twenty-six years to life in prison. Answer, Ex. B at 14RT 2236. On

14  July 1, 2010, the California Court of Appeal affirmed the judgment, and on October 13, 2010, the

15  California Supreme Court denied review. Court of Appeal Opinion at 1-2. Petitioner filed a

16  petition for writ of habeas corpus in the California Supreme Court on August 9, 2010, which was

17  summarily denied on May 18, 2011. *See* Petition, Ex. E.

18          Petitioner filed his Petition on July 5, 2011. ECF No. 1. This Court issued an order to

19  show cause on July 31, 2011. ECF No. 3. Respondent filed his Answer on January 26, 2012. ECF

20  No. 9 ("Answer"). Petitioner filed his Traverse on February 22, 2012. ECF No. 12 ("Traverse").

21  **III. Petition for Habeas Corpus**

22       **A. Standard of Review**

23          This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

24  custody pursuant to the judgment of a State court only on the ground that he is in custody in

25  violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (West

26  2012). This petition was filed after April 24, 1996, and is therefore governed by the Anti-

27  Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Petition (filed July 5, 2011).

28  Under AEDPA, a federal district court may not grant a habeas petition challenging a state

*Left margin (vertical):* **United States District Court** For the Northern District of California

4

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

conviction unless the state's ruling: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The "contrary to" and "unreasonable application" clauses have independent meaning. *Williams*, 529 U.S. at 405. "A state court's decision is contrary to clearly established federal law if it (1) applies a rule that contradicts the governing law set forth in Supreme Court cases, or (2) confronts a set of facts materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result." *Ramirez v. Castro*, 365 F.3d 755, 762 (9th Cir. 2004) (citing *Williams*, 529 U.S. at 405-06). That is, "mistakes in reasoning or in predicate decisions," such as "use of the wrong legal rule or framework," constitute error under the "contrary to" prong. *Frantz v. Hazey*, 533 F.3d 724, 734 (9th Cir. 2008) (en banc). Once a federal habeas court determines that a state decision falls under the "contrary to" prong, it "must then resolve the [constitutional] claim without the deference AEDPA otherwise requires." *Id.* at 735-37 (quoting *Panetti v. Quarterman*, 127 S. Ct. 2842, 2858 (2007) (internal quotations omitted).

A state court decision involves an "unreasonable application" of clearly established precedent if it (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

A federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

United States District Court
For the Northern District of California

of the law must be "objectively unreasonable" to support granting the writ.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of Petitioner's claims in a reasoned decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (looking to the "last *explained* state-court judgment") (emphasis in original).  Here, that decision is the opinion of the California Court of Appeal.

Even if constitutional error is found, habeas relief is not warranted unless the violation in question "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted); *see also Fry v. Pliler*, 551 U.S. 112, 119-20 (2007) (noting that AEDPA did not replace the *Brecht* test).

**B. Discussion**

**1.  Scope of Expert Testimony**

Petitioner's first claim relates to the Trial Court's restriction of the purposes for which the jury could consider Dr. Froming's testimony.  Petition at 1.  At trial, the Trial Court instructed the jury on first degree and second degree murder, as well as voluntary manslaughter based on heat of passion.  Court of Appeal Opinion at 6.

As explained by the Court in *People v. Cruz*, "[m]anslaughter, a lesser included offense of murder, is an unlawful killing without malice."  44 Cal. 4th 636, 664 (2008).  "Malice is presumptively absent when a defendant kills 'upon a sudden quarrel or heat of passion'… provided that the provocation is sufficient to cause an ordinarily reasonable person to act rashly and without deliberation, and from passion rather than judgment." *Id.*  (internal citations omitted).  This theory of manslaughter may be referred to voluntary manslaughter based on heat of passion.  Similarly, malice is absent "when a defendant kills in the actual but unreasonable belief that he or she is in imminent danger of death or great bodily injury." *Id.*  This theory of manslaughter may be referred to as voluntary manslaughter based on imperfect self-defense.

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

United States District Court
For the Northern District of California

With respect to Dr. Froming's testimony, the Trial Court instructed the jury that it could consider Dr. Froming's testimony in deciding "whether, at the time of the charged crime, the defendant acted with intent or mental state required for that crime'". Court of Appeal Opinion at 12. The Trial Court also instructed the jury that "Dr. Froming's testimony 'was admitted for the following limited purpose: whether defendant… acted willfully and deliberately, and with premeditation when he stabbed Eddie Reyes to death." *Id.* The Trial Court further instructed the jury that it could "not use Dr. Froming's testimony to reduce murder to voluntary manslaughter on the theory of heat of passion." *Id.*

Petitioner argues that, in limiting the jury's consideration of Dr. Froming's testimony, the Trial Court: (1) failed to fulfill its duty to instruct the jury on each element of the offense and relieved the prosecution of its burden of proving every element of the offense (Petition at 4 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993); *United States v. Gaudin*, 515 U.S. 506, 509-511, 522-23 (1995)), and (2) failed to fulfill its duty to instruct the jury on Petitioner's defense that he acted in the heat of passion. *See* Petition at 4 (citing *Mathews v. United States*, 485 U.S. 58, 63 (1988)). The Court addresses each of these issues in turn.

For the purposes of resolving the present Petition, the Court assumes *arguendo* that, to the extent the Trial Court's instruction regarding Dr. Froming's testimony concerned the issues of heat of passion and imperfect self-defense, the instruction may be characterized as an instruction pertaining to an element of Petitioner's offense, specifically malice. Even accepting these propositions, Petitioner's claim fails because the alleged instructional error was harmless.

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). However, an instructional error regarding an element of an offense does not warrant automatic reversal. *See Middleton*, 541 U.S. at 437 (holding that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation" such that reversal is warranted); *Neder v. United States*, 527 U.S. 1, 10 (1999) (holding that, like an instruction that misstates an element of the offense, an instruction which omits an element of the

United States District Court<br>For the Northern District of California

7

offense is subject to harmless error review).  Rather, such an error is subject to harmless error review and will warrant reversal only if it "so infected the entire trial that the resulting conviction violates due process.'"  *See Middleton*, 541 U.S. at 437-38 (denying habeas relief because single erroneous instruction concerning imminent peril given in connection with imperfect self-defense instruction was not reasonably likely to have misled the jury where trial court gave several other instructions which properly stated the standard).  If it "appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained,'" the conviction should not be disturbed.  *See Neder*, 527 U.S. at 15 (quoting *Chapman* v. *California,* 386 U.S. 18, 24 (1967)).  Furthermore, under AEDPA, where a state court has concluded that a constitutional error was harmless, such a determination should only be rejected if it is "'contrary to' or an 'unreasonable application'" of Federal law.  *Inthavong v. Lamarque*, 420 F.3d 1055, 1059-61 (9th Cir. 2005).

The Court of Appeal concluded the Trial Court's instructions regarding Dr. Froming's testimony did not constitute error to the extent that the instructions prohibited Dr. Froming's testimony from being considered in connection with the issue of heat of passion.  Court of Appeal Opinion at 13-15.  However, the Court of Appeal held that the instructions may have constituted error to the instructions extent the prevented the jury from considering Dr. Froming's testimony in connection with establishing imperfect self-defense.  *Id.* at 15-17.

Nevertheless, the Court of Appeal rejected Petitioner's claim on the grounds that any error was harmless:

> [T]he jury was properly instructed that it could consider Dr. Froming's testimony on appellant's subjective mental state in determining whether appellant premeditated and deliberated before killing Reyes.  Under this instruction, by concluding that appellant acted with premeditation and deliberation, the jury must necessarily have rejected Dr. Froming's testimony otherwise the jury would have returned a verdict of second degree murder.  Even if we were to apply the stricter beyond-a-reasonable-doubt standard of Chapman v. California (1967) 386 U.S. 18, 24 (87 S.Ct. 824), we conclude any error was harmless.

*Id.* at 18.

The Court of Appeal's conclusion that any instructional error was harmless because the jury "must necessarily have rejected Dr. Froming's testimony" was not unreasonable.  *Id.*.  By

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

concluding that Petitioner's actions were deliberate and premeditated, the jury necessarily found that Petitioner did not act "rashly and *without deliberation,*" a requirement for heat of passion. *Cruz*, 44 Cal. 4th at 664 (emphasis added). Thus, logically, it may be inferred that, even if the Trial Court had not improperly instructed the jury regarding its consideration of Dr. Froming's testimony, the jury still would have reached the same conclusion with respect to heat of passion. Furthermore, the jury's finding of premeditation and deliberation conflicts with the central conclusions in Dr. Froming's testimony (*e.g.* that Petitioner was "misperceive[ing]" events and unable to properly reflect on his actions). Court of Appeal Opinion at 4-5. The jury's finding therefore suggests that the jury did not attribute significant weight to Dr. Froming's testimony *generally*. Accordingly, the jury was unlikely to consider Dr. Froming's testimony to be persuasive with respect to either heat of passion or imperfect self-defense. The Court of Appeal was therefore not unreasonable in concluding that the alleged instructional error regarding Dr. Froming's testimony was harmless. *See Neder v. United States*, 527 U.S. at 15 (holding that an instructional error is harmless if it appears "beyond a reasonable doubt that the [instructional] error complained of did not contribute to the verdict obtained.") (internal quotations omitted).

Furthermore, even if the Court of Appeal's harmless error determination could be considered unreasonable, Petitioner is not entitled to habeas relief because Petitioner has failed to demonstrate actual prejudice under *Brecht*. *See Inthavong*, 420 F.3d at 1059 (holding that where a "state court's harmless error holding is contrary to Supreme Court precedent or objectively unreasonable… [then] [w]e revert to" harmless error review under *Brecht*). Under *Brecht*, an error is "harmless if [it] do[es] not have a 'substantial and injurious effect or influence in determining the jury's verdict'" *Id.* (quoting *Brecht*, 507 U.S. at 637). A substantial and injurious effect "means a 'reasonable probability' that the jury would have arrived at a different verdict had the instruction been given." *Byrd v. Lewis*, 566 F.3d 855, 860 (9th Cir. 2009). When reviewing a state court's harmless error determination to see whether it is contrary to or an unreasonable application of federal law, a federal district court is limited to considering "the reasonableness of the evaluations and conclusions that the state court… made." *Inthavong*, 420 F.3d at 1061. However, in

9

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    determining actual prejudice under *Brecht*, the Court can make its own "independent evaluations

2    about the weight and… sufficiency of the various items of evidence." *Id.* at 1060-61.

3        In this case, the Court concludes that Petitioner's claim fails under *Brecht* prejudice review.

4    As an initial matter the Court agrees that there was no prejudice because the jury's verdict of first

5    degree murder and its implicit findings of premeditation and deliberation suggest that the jury

6    rejected Dr. Froming's testimony.  Moreover, the Court finds that a finding of prejudice is

7    unwarranted because, even considering Dr. Froming's testimony, there was insufficient evidence to

8    support the conclusion that Petitioner acted based on heat of passion or in imperfect self-defense.

9    As will be discussed *infra* Section III(B)(2), the evidence does not support the conclusion that the

10   circumstances preceding the murder, specifically Mr. Reyes's calling Petitioner names and pushing

11   Petitioner, would have "arouse[d] the passions of the ordinarily reasonable person" (*i.e.* the

12   objective component of heat of passion was not satisfied).  Court of Appeal Opinion at 15 (quoting

13   *People v. Padilla*, 103 Cal.App.4th 675, 679 (2002)).  Dr. Froming's testimony, which at best

14   pertained to the subjective component of heat of passion (*i.e.* Petitioner's state of mind) would

15   have done little, if anything, to remedy this evidentiary gap.  *See* Court of Appeal Opinion at 15

16   (concluding that Dr. Froming's testimony regarding Petitioner's tendency to misperceive events

17   would not have satisfied the objective component of heat of passion because "a perception[,] or in

18   this case misperception[,] with no objective reality cannot arouse the passions of the ordinarily

19   reasonable person") (quoting *Padilla*, 103 Cal. App. 4th at 679).  Similarly, as will be discussed

20   *infra*, Section III(B)(3), even taking into account Dr. Froming's testimony, the evidence in this case

21   does not support the conclusion that Petitioner believed he faced an imminent danger, as is required

22   to establish imperfect self-defense.  *See infra*, Section III(B)(3).  Accordingly, Petitioner was not

23   prejudiced to the extent Dr. Froming's testimony was omitted for the purposes of determining

24   imperfect self-defense.  This Court therefore concludes that the Trial Court's alleged instructional

25   error regarding Dr. Froming's testimony did not have a "substantial and injurious effect or

26   influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637; *see also Green v. McDonald*,

27   No. CV 09-1575-PSG, 2009 WL 3514636, at *7 (C.D. Cal. Oct. 26, 2009) (concluding that

28

10

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

1    "[g]iven the lack of evidence supporting the theories of 'heat of passion' and 'imperfect self-

2    defense,' it cannot be said that the omission of the jury instructions caused any substantial or

3    injurious influence on the verdict").

4            Petitioner also argues that, to the extent the instructional error regarding Dr. Froming's

5    testimony rendered the instructions regarding heat of passion and imperfect self-defense deficient,

6    Petitioner was deprived of his right, under *Mathews*, to have the jury instructed on a defense

7    theory.  *See* Petition at 4 (citing *Mathews*, 485 U.S. at 63).  The Court of Appeal does not appear to

8    have reached this issue as it concluded that the Trial Court's instruction did not result in

9    Petitioner's being deprived of his right to present a defense, but rather resulted in the exclusion of

10   "some evidence" relevant to one element of Petitioner's defense.  Court of Appeal Opinion at 17-

11   18.  Nevertheless, reviewing this claim *de novo*, this Court concludes Petitioner's claim fails.

12           In *Mathews*, the Supreme Court held that "a defendant is entitled to an instruction as to any

13   recognized defense…." 485 U.S. at 63.[2]  However, in order for this right to be implicated there

14   must "*exist[] evidence* sufficient for a reasonable jury to find in his favor."  *Id.* (emphasis added);

15   *see also Byrd v. Lewis*, 566 F.3d at 860 ("Failure to instruct on the defense theory of the case is

16   reversible error if the theory is legally sound a*nd evidence in the case makes it applicable.*")

17   (emphasis added) (internal citations and quotations omitted).  Moreover, in order to be entitled to

18   habeas relief, Petitioner must show that "the alleged instructional error" regarding Petitioner's

19   defense theory "had substantial and injurious effect or influence in determining the jury's verdict."

20   *Byrd*, 566 F.3d at 860 (citing *Clark v. Brown,* 450 F.3d 898, 905 (9th Cir. 2006)).

21           The Court accepts *arguendo* that the Trial Court's instruction relating to Dr. Froming's

22   testimony may be viewed as an instruction pertaining to a recognized defense under *Mathews*.

23   ─────────────────

24   [2] The Court notes Respondent's argument that *Mathews* does not apply to instructions pertaining to
     voluntary manslaughter based on heat of passion and imperfect self-defense because these two
     legal theories are properly characterized as lesser-included offenses rather than defenses.  *See*

25   Answer at 18-19.  The Court also notes Respondent's argument that there is disagreement within
     the Ninth Circuit as to whether *Mathews* even establishes a constitutional right that may be

26   enforced through habeas corpus proceedings.  *See Id.* at 17.  These arguments may have merit,
     however the Court need not resolve them because the Court concludes that Petitioner's argument

27   fails even accepting that *Mathews* applies to habeas claims and that instructions on heat of passion
     and imperfect self-defense may be characterized as instructions pertaining to a defense theory.

28                                                                        11

1   Even accepting this proposition, Petitioner's argument fails because there was not "evidence

2   sufficient" to warrant an instruction on either heat of passion or imperfect self-defense. *Mathews*,

3   485 U.S. at 63. As will be discussed *infra* Section III(B)(2), a heat of passion instruction was not

4   warranted in this case because there was insufficient evidence to show that the objective

5   component of heat of passion was satisfied (*i.e.* that the circumstances would have "arouse[d] the

6   passions of the ordinarily reasonable person"). Court of Appeal Opinion at 15 (quoting *Padilla*,

7   103 Cal.App.4th at 679). Similarly, Petitioner was not entitled to an imperfect self-defense

8   instruction because there was insufficient evidence Petitioner acted under fear of *imminent* harm.

9   *See infra*, Section III(B)(3). Accordingly, the Court concludes that any instructional error

10   regarding Dr. Froming's testimony did not deprive Petitioner of his right to have the jury instructed

11   on a defense . *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (holding that, while the

12   failure to instruct the jury on voluntary and involuntary manslaughter, might "constitute a

13   cognizable habeas claim" where "those offenses are consistent with [petitioner's] theory of the

14   case," petitioner was not  entitled to habeas relief "because there was not substantial evidence to

15   support either charge"). Furthermore, even if it did, Petitioner's claim fails because, as set forth

16   above, the purported instructional error did not have a "substantial and injurious effect or influence

17   in determining the jury's verdict." *Byrd*, 566 F.3d at 860.

18          For these reasons, Petitioner's first claim for relief fails.

19          **2.  Jury Instructions on the Objective Standard of Provocation**

20          Petitioner's second claim for relief is that he "was deprived of his constitutional rights when

21   the court erroneously instructed" that the standard for provocation was "objective." Petition at 8.

22   Specifically, Petitioner argues that the Trial Court's voluntary manslaughter instruction was

23   deficient because it informed the jury that "[i]n deciding whether the provocation was sufficient,

24   [the jury should] consider whether a person of average disposition would have been provoked and

25   how such a person would react in the same situation knowing the same facts." *Id.* (quoting 2CF

26   347, 11RT 2040).

27

28

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Petitioner notes that the Trial Court's instruction was taken from the version of California

2   Criminal Jury Instruction No. 570 ("CALCRIM No. 570"), which addresses voluntary

3   manslaughter based on heat of passion. *Id.* Petitioner contends that CALCRIM No. 570 was

4   inconsistent with California law because, under California law, in determining whether a

5   defendant's murder charge should be reduced to voluntary manslaughter based on heat of passion,

6   "[t]he focus [should be solely] on the provocation… and whether it was sufficient to cause a

7   reasonable person to act rashly." *Id.* at 9 (quoting *People v. Najera*, 138 Cal. App. 4th 212, 223

8   (2006) (emphasis omitted)). Petitioner contends that whether the defendant's actual response to the

9   provocation (*e.g.* committing murder) is reasonable is "not relevant." *Id.* (quoting *Najera*, 138 Cal.

10  App. 4th at 223). Petitioner notes that, after his trial, California Criminal Jury Instruction No. 570

11  was amended to clarify that the focus should be on whether an ordinary person "would have

12  reacted from passion rather tha[n] from judgment," and not on whether the ordinary person would

13  have responded in the same way as the defendant. *Id.* (quoting CALCRIM No. 570 (Fall 2008

14  ed.)).[3]

15    Petitioner argues that he is entitled to habeas relief because the Trial Court's instructional

16  error regarding the objective component of the provocation standard deprived Petitioner of his right

17  to have the jury correctly instructed on every element of the offense (*see* Petition at 8-9 (citing

18  *Gaudin*, 515 U.S. at 509-11, 522-23; *Sullivan*, 508 U.S. at 277-78)), and relieved the prosecution of

19  its burden of proving that Petitioner did not act with provocation. *Id.* at 10-11 (citing *Mullaney v.*

20  *Wilbur*, 421 U.S. 684, 704 (1975); *Pope v. Illinois*, 481 U.S. 497, 501, 504 (1987)). Petitioner also

21  contends that the instructional error deprived Petitioner of his right to have the jury instructed on

22  his defense theory. *Id.* at 9, 11 (citing *Mathews*, 485 U.S. at 63). Petitioner's arguments fail.

23

24

25  _____

[3] The relevant portion of the most recent version of CALCRIM No. 570 provides that: "It is not

26  enough that the defendant simply was provoked. The defendant is not allowed to set up (his/her) own standard of conduct. You must decide whether the defendant was provoked and whether the

27  provocation was sufficient. In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have

28  reacted from passion rather than from judgment."

13

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

1    As to Petitioner's first argument for relief (*i.e.* that habeas relief is warranted because the

2    trial court failed to correctly instruct the jury on every element of the offense and relieved the

3    prosecution of its burden of proof), this argument fails.  Claims that merely challenge the

4    correctness of jury instructions under state law do not state a claim for habeas corpus relief.  *Van*

5    *Pilon v. Reed*, 799 F.2d 1332, 1342 (9th Cir. 1986); *see also Estelle v. McGuirre*, 502 U.S. 62, 71-

6    72 (1991).  To merit federal habeas relief when an allegedly erroneous jury instruction is given, a

7    petitioner must show that the alleged "ailing instruction by itself so infected the entire trial that the

8    resulting conviction violates due process."  *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009)

9    (quotations and citations omitted).  In other words, Petitioner must show that the instructional error

10   was not harmless.

11   Additionally, to obtain habeas relief, a petitioner is required to show that the alleged

12   instructional error resulted in "actual prejudice."  *Morales v. Woodford*, 388 F.3d 1159, 1172 (9th

13   Cir. 2004).  That is, a petitioner must show the alleged instructional error "had substantial and

14   injurious effect or influence in determining the jury's verdict."  *Clark v. Brown*, 450 F.3d 898, 905

15   (9th Cir. 2006) (quoting *Brecht*, 507 U.S. at 637).  "A 'substantial and injurious effect' means a

16   'reasonable probability' that the jury would have arrived at a different verdict" had the alleged

17   instructional error not occurred.  See *Byrd*, 566 F.3d at 860 (quoting Clark, 450 F.3d at 916).

18   Here, the Court of Appeal concluded that the challenged instruction may have been

19   "ambiguous" because it invited jurors to consider "whether the provocation would cause an

20   average person to do *what the defendant did*."  Court of Appeal Opinion at 23 (emphasis in

21   original).  However, the Court of Appeal reasoned that any error was harmless because Petitioner

22   was not entitled to a heat of passion instruction in the first place.  *Id.* at 25.  In reaching this

23   conclusion, the Court of Appeal relied heavily on *Najera*.  *See* Court of Appeal Opinion at 23-25.

24   In *Najera*, the defendant stabbed his house mate after the house mate had called defendant a

25   "fag" and pushed the defendant on the ground, and after the defendant and the house mate had

26   engaged in a fist fight.  138 Cal. App. 4th at 215-16.  After the defendant was convicted of murder,

27   he appealed claiming: (1) the prosecutor had committed prejudicial misconduct in his arguments to

28

14

*United States District Court*
For the Northern District of California

the jury about provocation; and (2) his trial counsel was ineffective to the extent he failed to object to the challenged statements.  *Id.* at 225.  The *Najera* Court held that the alleged errors were not prejudicial because the Defendant was not entitled to a provocation instruction in the first instance. *Id.* at 226.  The *Najera* Court reasoned that "words of reproach, however grievous they may be, or gestures, or an assault, or even a blow, is not recognized as sufficient to arouse, in a reasonable man, such passion as reduces an unlawful killing with a deadly weapon to manslaughter."  *Id.* at 226 (quoting *People v. Wells*, 10 Cal. 2d 610, 623 (1938)).

Applying *Najera* to the instant case, the Court of Appeal reasoned that, while Petitioner was "called a derogatory… name and pushed[,] and [may have had] his masculinity… challenged," these circumstances were not sufficient to cause a reasonable person to react "from passion rather than from judgment."  Court of Appeal Opinion at 24.  Thus, the Court of Appeal concluded that Petitioner failed to present evidence sufficient to establish the objective component necessary to show heat of passion.  *Id.*  Accordingly, Petitioner was not entitled to a voluntary manslaughter instruction in the first instance and any error in this instruction could not have prejudiced him.  *Id.* at 24-25 (citing *People v. Jackson*, 28 Cal.3d 264, 306 (1980), *disapproved of on other grounds in People v. Cromer*, 24 Cal. 4th 889, 901 n.3 (2001)).

Petitioner challenges the Court of Appeal's conclusion that Petitioner was not entitled to a heat of passion instruction and its corresponding harmless error determination.  Petition at 11. [4]

---

[4] The Court notes that Respondent argues that the failure to provide instructions pertaining to voluntary manslaughter does not constitute a failure to provide an instruction on an element of the offense of murder, but rather a failure to provide an instruction on a lesser-included offense. Answer at 16.  Respondent contends that there is no clearly-established federal law providing that a failure to instruct on a lesser-included offense violates a Petitioner's constitutional rights in a non-capital case.  *See id; see also Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (rejecting Petitioner's claim that his rights were violated by the state's courts failure to instruct on the lesser included offenses of manslaughter and voluntary murder because "the failure of a state court to instruct on a lesser offense… fails to present a federal constitutional question….").  Petitioner argues that, in a murder trial, the prosecution is required to prove the absence of heat of passion in order to show malice, an element of murder.  *See* Traverse at 7; *see also Mullaney*, 421 U.S. at 704 (holding "that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion… when the issue is properly presented in a homicide case").  Thus, Petitioner contends, the requested heat of passion instruction was an instruction as to an element of the offense rather than on a lesser included offense.  *See* Traverse at 7.  The Court need not resolve this issue because there was insufficient evidence to show heat of passion; thus, any instructional error related to heat of passion was harmless.

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

1    Where a state court has concluded that a constitutional error was harmless, such a determination

2    should only be rejected if it is "contrary to or involves an unreasonable application" of federal law.

3    *Inthavong*, 420 F.3d at 1061.  Moreover, where a state court has determined that, under state law,

4    there was insufficient evidence to support an instruction on a lesser included offense such a

5    determination is presumed to be valid and ordinarily should not be disturbed by a federal court on

6    habeas review.  *See Menendez*, 422 F.3d at 1029 (holding California Court of Appeal's holding that

7    defendants were not entitled to an imperfect self-defense instruction in connection with defendants'

8    murder trial "should be the final word on the subject"); *Hartman v. Summers*, 120 F.3d 157, 161

9    (9th Cir.1997) (holding that trial court's conclusion that petitioner "did not have an actual fear of

10   imminent harm," as is required to show voluntary manslaughter based on imperfect self-defense,

11   "is presumed to be correct").

12          In this case, the Court agrees that there was insufficient evidence to warrant a heat of

13   passion instruction.  In order to establish heat of passion, Petitioner was required to show not only

14   that he subjectively acted in the heat of passion, but also that "an ordinarily reasonable person"

15   would have reacted "rashly and without deliberation" under the circumstances.  *Cruz*, 44 Cal. 4th at

16   664.  As recognized by the Court of Appeal, like the name calling and push in *Najera*, Mr. Reyes's

17   comments to Petitioner (e.g. telling Petitioner he looked "like[] Dave Chappelle on crack") and the

18   subsequent push would not have caused an ordinary person to react rashly.  *Id.*, 138 Cal. App. 4th

19   at 226.

20          Petitioner argues that *Najera* is inapposite for several reasons.  Petition at 11.  First,

21   Petitioner argues that *Najera* is distinguishable because "Petitioner was humiliated by [Mr. Reyes]

22   who claimed gang membership" and "gang culture values respect and views a sign of weakness as

23   a serious flaw."  Petition at 11.  Thus, Petitioner contends "a reasonable person would feel more

24   compelled to respond rashly."  *Id.*  However, Petitioner fails to cite any authority to support this

25   argument.  Moreover, the authority of which the Court is aware suggests that a reasonable person

26   would not have been more compelled to respond rashly because of Mr. Reyes' gang affiliation.  *Cf*

27   *Green*, 2009 WL 3514636 at *7 (adopting magistrate judge's holding that "while… evidence of [a]

28

16

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    gang challenge and gang rivalry may have provoked a gang member to violence, it would not have

2    caused an ordinary person of average disposition to act irrationally and without due deliberation

3    and reflection").  Accordingly, this argument fails.

4        Second, Petitioner argues that *Najera* is distinguishable because Petitioner "never met [Mr.]

5    Reyes before" and had no "motive to kill [Mr. Reyes] other than the emotional reaction from the

6    confrontation 10 to 20 minutes earlier."  Petition at 11-12.  However, even assuming *Petitioner* was

7    sufficiently "emotional… *10 to 20 minutes*" after his confrontation with Mr. Reyes to have been

8    acting rashly (*id.* at 12 (emphasis added)), Petitioner has failed to present any evidence showing

9    that a *reasonable* person would also have been sufficiently emotional, as a result of the initial

10    confrontation with Mr. Reyes, to have been acting in the heat of passion at the time of the murder.

11    Accordingly, Petitioner's argument is rejected.

12        Finally, Petitioner argues that *Najera* should not be applied because *Najera's* holding

13    conflicts with California Supreme Court authority holding that "as a matter of law, mere words can

14    be sufficient to permit jury consideration of voluntary manslaughter."  Petition at 11.  Petitioner's

15    argument fails.  *Najera* did not hold that mere words could not, under any circumstances, be

16    sufficient to permit the jury to consider voluntary manslaughter.  Rather, *Najera* held that the

17    "words of reproach" in that case (*i.e.* calling the defendant a "faggot") and the fact that the victim

18    pushed the defendant were not sufficient to arouse the passions of the ordinary person.  *Id.*, 138

19    Cal. App. 4th at 226.  Similarly, as discussed *supra*, even in light of Mr. Reyes' purported gang

20    membership, the words of reproach in this case (*e.g.* telling he looked "like Dave Chappelle on

21    crack" (*id.* at Petition at 1)) and Mr. Reyes' pushing Petitioner, were not sufficient to provoke

22    passion in an ordinary, reasonable person.

23        Accordingly, the Court concludes that the Court of Appeal's reliance on *Najera* was not

24    misplaced and the Court of Appeal did not err in concluding that there was insufficient evidence to

25    warrant a heat of passion instruction.  Furthermore, in  light of the fact that Petitioner was not

26    entitled to a heat of passion instruction,  the Court of Appeal's conclusion that the instructional

27    error regarding provocation was harmless was neither contrary to nor an unreasonable application

28

17

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

of federal law.  *See Kray v. Stewart*, 373 F. App'x 762, 764 (9th Cir. 2010) *cert. denied,* 131 S. Ct.
427 (2010) (holding that "[t]he Washington Court of Appeals did not violate Kray's constitutional
rights when it ruled that any error in the… self-defense instruction was harmless because Kray was
not entitled to a self-defense jury instruction"); *United States v. Bertman*, 686 F.2d 772, 775 (9th
Cir. 1982) ("Our review of the record convinces us that Bertman failed to present any evidence
whatsoever sufficient to entitle him to an instruction on the defense of coercion.  Since he was not
entitled to an instruction, the one given, even though erroneous, could only have benefited him.");
*Shelmire v. Yates*, CV 06-1058-VAP, 2009 WL 2379988, at *3 (E.D. Cal. July 30, 2009)
(concluding that California Court of Appeal was not unreasonable in concluding that the trial
court's instructional errors concerning petitioner's withdrawal defense were harmless because
"[p]etitioner was not entitled to an instruction on the withdrawal defense").   Thus, the Court
concludes that Petitioner is not entitled to habeas relief on the grounds that the Trial Court
incorrectly instructed the jury on all the elements of the offense and relieved the prosecution of its
burden of proof.

Citing *Mathews*, Petitioner also argues the instructional error deprived him of his right to
have the jury correctly instructed on his defense theory.  Petition at 9, 11.  This argument also fails.
Under *Mathews*, Petitioner is only "entitled to an instruction as to… [a] defense *for which there
exists evidence* sufficient for a reasonable jury to find in his favor."  *Id.*, 485 U.S. at 63 (emphasis
added).  As set forth above, there was insufficient evidence for a reasonable jury to find in
Petitioner's favor on the issue of heat of passion.  Accordingly, the Court of Appeal's conclusions
that Petitioner was not entitled to an instruction on heat of passion, and that Petitioner was
therefore not prejudiced by the ambiguous instruction given, was neither contrary to nor an
unreasonable application of *Mathews.  See id.*; *see also Solis*, 219 F.3d at 929 (holding that, while
the failure to instruct the jury on voluntary and involuntary manslaughter, might "constitute a
cognizable habeas claim" where "those offenses are consistent with [petitioner's] theory of the
case," petitioner was not  entitled to habeas relief "because there was not substantial evidence to
support either charge").

18

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

1    Furthermore, even if the Court were to simply assume that Petitioner was entitled to a heat

2    of passion instruction and that the failure to give a proper instruction violated Petitioner's rights

3    under *Mathews*, Petitioner's claim still fails because the Court cannot conclude that the ambiguous

4    instruction given had a "substantial and injurious effect or influence in determining the jury's

5    verdict." *Brecht*, 507 U.S. at 637.  Given the evidentiary deficiencies with respect to the objective

6    component of heat of passion, there was not "a 'reasonable probability' that the jury would have"

7    found in Petitioner's favor with respect to heat of passion even if an unambiguous instruction had

8    been given.  *Byrd*, 566 F.3d at 860.  Accordingly, Petitioner was not sufficiently prejudiced to

9    warrant habeas relief.  *See id.* (concluding that habeas relief was not warranted where requested

10   instruction on defense theory was not supported by adequate evidence).

11       For these reasons, Petitioner's second claim for relief fails.

12   **3.  Lack of Jury Instructions on Imperfect Self-Defense**

13       Petitioner's third claim for relief is that he was "deprived of his constitutional rights when

14   the court erroneously refused to instruct on imperfect self-defense."  Petition at 13.  As set forth

15   *supra* Section III(B)(1), imperfect self-defense is a doctrine pursuant to which murder may be

16   reduced to the lesser-included offense of voluntary manslaughter because of the absence of malice.

17   *Cruz*, 44 Cal. 4th at 664.  The doctrine of imperfect self-defense applies "when a defendant kills in

18   the actual but unreasonable belief that he or she is in imminent danger of death or great bodily

19   injury…"  *Id.*

20       Petitioner contends that he was entitled to an imperfect self-defense instruction because

21   there were sufficient facts in the record to show that Petitioner was acting out of fear when

22   Petitioner stabbed Mr. Reyes.  Traverse at 12-13.  Petitioner contends that this conclusion is

23   supported by, *inter alia*: (1) Petitioner's purported knowledge of Mr. Reyes' gang affiliations (*id.*

24   at 13-14); (2) Mr. Reyes having challenged Petitioner to a fist fight during the earlier altercation on

25   the porch (*id.* at 15); and (3) the fact that when Mr. Reyes emerged from the back room of Mr.

26   Miller's apartment, he was holding a cell phone to his ear, which Petitioner contends he could have

27   mistaken for a weapon and panicked (*id.*).  Petitioner also contends that Dr. Froming's testimony

28

19

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

United States District Court
For the Northern District of California

1    supports the theory that Petitioner could have easily misperceived the situation both on the porch

2    and in Mr. Miller's apartment, and, as a result of that misperception, believed he needed to defend

3    himself with lethal force.  Petition at 14.

4           Petitioner argues that, by failing to give an imperfect self-defense instruction, the Trial

5    Court failed to fulfill its duty to instruct the jury on every element of the offense, and failed to

6    fulfill its duty to instruct the jury on Petitioner's defense theory.  Petition at 13.  Petitioner's

7    arguments fail because there was insufficient evidence to support an imperfect self-defense theory.

8           As to Petitioner's claim that he was denied his right to have the jury instructed on every

9    element of the offense because no imperfect self-defense instruction was given, this claim fails.

10   "[A] state trial court's finding that the evidence does not support a claim of imperfect self-defense

11   is entitled to a presumption of correctness on federal habeas review."  *See Menendez*, 422 F.3d at

12   1029 (citing *Hartman*, 120 F.3d at 161).  In general, an "error in [a] state court's determination of

13   whether state law allowed for an instruction… [ordinarily] cannot form the basis for federal habeas

14   relief."  *Menendez*, 422 F.3d at 1029.  Such an error will only warrant habeas relief if it "so

15   infected the entire trial that the resulting conviction violate[d] due process."  *Id.* (quoting

16   *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

17          On direct appeal, the Court of Appeal concluded that Petitioner was not entitled to an

18   imperfect self-defense instruction because imperfect self-defense requires "an unreasonable belief

19   of *imminent* harm" (Court of Appeal Opinion at 25 (citing *People v. Michaels*, 28 Cal.4th 486, 530

20   (2002) (emphasis in original))), and, here, there was insufficient evidence that Petitioner feared that

21   he faced imminent harm.  *Id.* at 27.  This conclusion was not unreasonable in light of the facts.

22          As recognized by the Court of Appeal, in order to show imperfect self-defense, Petitioner

23   must show that he attacked Mr. Reyes based on an "unreasonable belief that [Petitioner was]… in

24   imminent danger of death or great bodily injury…"  *Cruz*, 44 Cal. 4th at 664.  In this case, the

25   evidence shows, and it is uncontested, that: (1) approximately 10 to 20 minutes after Petitioner and

26   Mr. Reyes argued on the front porch of the apartment building, Petitioner went downstairs and

27   knocked on Mr. Miller's door; (2) after Petitioner knocked on the door, Mr. Reyes walked from the

28

20

1    back bedroom holding a cell phone; and (3) after Mr. Reyes came out of the bedroom, Petitioner

2    moved "quickly into the apartment" and stabbed Mr. Reyes.  *See* Petition at 2; Court of Appeal

3    Opinion at 3; Answer, Ex. B, 5RT 986.  Furthermore, the evidence shows that it was not until after

4    the stabbing that the other men in the apartment rushed out of the bedroom.  Petition at 2; Court of

5    Appeal Opinion at 3; Answer, Ex. B, 5RT 986.  These facts weigh strongly against a finding that

6    Petitioner attacked Mr. Reyes because he held the belief that Mr. Reyes or his friends posed an

7    imminent danger of great bodily injury.

8          Petitioner argues that he believed he was in imminent danger because, during the initial

9    confrontation in front of the apartment building, Mr. Reyes indicated that Mr. Reyes was a

10    "Norteño," pushed Petitioner, and challenged Petitioner to a fist fight.  Traverse at 12.  However,

11    Petitioner was able to walk away from the group after the initial confrontation, thereby ending any

12    imminent threat to Petitioner's safety.  Court of Appeal Opinion at 3.  Moreover, it was *Petitioner*

13    who went to Mr. Miller's apartment 10 to 20 minutes after the initial confrontation.  *Id.* at 27.  To

14    the extent Petitioner contends that he went to Mr. Miller's apartment because he feared Mr. Reyes

15    posed a future threat to Petitioner and/or his mother, this argument is unavailing because the fear of

16    a future threat will not suffice to show Petitioner believed he was in *imminent* danger.  *See*

17    *Menendez*, 422 F.3d at 1030 (holding that defendant's fear that "his parents would kill him when

18    they exited the room [was] insufficient to support" an imperfect self-defense instruction because

19    "the danger" that defendant would be harmed "in the future" did not satisfy the imminent peril

20    requirement).

21          Petitioner also argues that, seeing Mr. Reyes "emerge from somewhere out of view[,]

22    [specifically, Mr. Miller's bedroom], holding an unknown metallic object," could have caused

23    Petitioner to believe that he faced imminent danger.  Traverse at 13.  Petitioner argues that "[h]e

24    was likely aware that there were swords in the apartment" and that he could have believed that

25    there were other weapons as well.  *Id.*  This argument is equally unavailing.  Even accepting that

26    there were swords somewhere in the apartment and  considering Petitioner's alleged mental

27

28

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

impairments (*i.e.* Petitioner's tendency to misperceive events[5] and paranoia as identified by Dr. Froming), it stretches the imagination to conclude that Petitioner believed that Mr. Reyes' phone was a weapon.  Moreover, while Petitioner argues that he could have held such a belief in his briefs (Petition at 13), Petitioner has failed to direct the Court's attention to any actual evidence, besides Dr. Froming's testimony concerning Petitioner's mental impairments, showing Petitioner actually believed, at the time of the murder, that Mr. Reyes was holding a weapon and that Mr. Reyes intended to attack Petitioner.   Given the lack of evidence supporting Petitioner's contention that he killed Mr. Reyes based on an unreasonable fear of imminent harm, the Court cannot conclude that the Court of Appeal erred in determining that the facts in this case did not support an imperfect self-defense instruction.  *See Menendez*, 422 F.3d at 1029 ("[A] state trial court's finding that the evidence does not support a claim of imperfect self-defense is entitled to a presumption of correctness on federal habeas review."); *see also* 28 U.S.C. § 2254 (e)(1)(providing that, on habeas review under Section 2254, a federal court must accept all factual findings made by the state court unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence").

Thus, to the extent the failure to provide an instruction on imperfect self-defense may be characterized as a failure to provide an instruction on a lesser included offense, the failure to provide such an instruction was harmless.  *See Menendez*, 422 F.3d at 1029 (concluding that Petitioners' due process rights were not violated by trial court's failure to provide imperfect self-defense instruction because no such instruction was warranted due to the lack of evidence that Petitioners "believed they were in *imminent* peril"); *United States v. Manuel*, 706 F.2d 908, 916 (9th Cir. 1983) (concluding that "the district court's error [in refusing to give an involuntary manslaughter instruction] was harmless because the defendant was not entitled to an involuntary

---

[5] The Court notes that Dr. Froming's testimony indicated Petitioner had tendency to misperceive what was being said.  *See* Answer, Ex. B, 7RT 1771 ("There may be misperceptions in what is being said or how it's being said."); *id.* 1778 (noting that, "[in] social situations" Petitioner might "do what's called 'confabulating'" and "may have a gist which may be accurate or misperceived").  Given the nature of Petitioner's tendency to misperceive events, it is especially unclear how this tendency would have caused Petitioner to believe Mr. Reyes was attacking him with a sword.

22

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

manslaughter instruction in any event"). The Court therefore concludes that Petitioner was not denied his right to have the jury instructed on every element of the offense. The decision of the Court of Appeal rejecting Petitioner's claim on the grounds that Petitioner was not entitled to an imperfect self-defense instruction was neither contrary to nor an unreasonable application of federal law.

Petitioner's claim that he was denied his right to have the jury instructed on a defense theory fails for the same reason. In this case, there was not "evidence sufficient for a reasonable jury to find in his favor" on the issue of imperfect self-defense. *See Mathews*, 485 U.S. at 63.[6]

For the reasons set forth above, Petitioner's third claim for relief fails.

### 4. Prosecutorial Misconduct

Petitioner's fourth claim for relief is that "[r]eversal is required because the prosecution committed misconduct, violating the right to a fair trial." Petition at 16. Specifically, Petitioner claims that the prosecution committed misconduct by: (1) misstating the law; (2) misstating the facts; and (3) improperly appealing to the passions and prejudice of the jury. *Id.* at 16-17. The Court addresses each of these supposed grounds for misconduct in turn.

### a. The Prosecutor's Alleged Misstatement of Law

Petitioner contends that the prosecutor misstated the law regarding the length of time during which a defendant may be said to be in the heat of passion. Petition at 17-18. At trial the prosecutor made the following statements regarding whether Petitioner had adequate time to "cool off" between the initial altercation on the porch and the stabbing in Mr. Miller's apartment:

---

[6] Petitioner also argues that this Court should grant him habeas relief because "[w]hether there was a reasonable inference petitioner could have been in fear is a matter of federal law." Traverse at 13. Petitioner cites *Mathews* and *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), in support of this argument. Neither case supports Petitioner's argument. *Mathews* stands for the proposition that a defendant is entitled to an instruction on a defense theory where "there exists evidence sufficient for a reasonable jury to find in his favor." 485 U.S. at 63. The portion of *Jackson* cited by Petitioner simply holds that when determining whether the evidence was sufficient to support a conviction in a criminal case, a court must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. Thus, neither *Mathews* nor *Jackson* supports the conclusion that the issue of whether he was in fear for his life when he stabbed Mr. Ryes "is a matter of federal law." Traverse at 13.

23

United States District Court
For the Northern District of California

1

2

3

> [E]nough time had passed for our average person to have cooled off.  That's why this isn't voluntary manslaughter.  The classic example of voluntary manslaughter… is a spouse walks in on their [husband or wife] and sees their husband or wife in bed with another person… [and then the spouse] takes out their gun and shoots them seconds later… That's the kind of emotion we're talking bout for voluntary manslaughter heat of passion."

4

Petition at 16 (quoting 11RT 2066-67).  Defense counsel objected, and the objection was sustained.

5

*Id.* (citing 11RT 2067).  "The [Trial Court] then admonished the jury that it will explain what the

6

law is and that 'sufficient provocation may occur over a short or a long period of time….' " *Id.*

7

(quoting 11RT 2067).

8

> The prosecutor went on to state that:

9

> "[T]his would be a different case, if after Eddie [Reyes] pushed [Petitioner] and challenged him to a fight, then [Petitioner] took out his knife right then and there and started stabbing Eddie.  Then we'd have a question, is that second degree murder?  Is that just an intent to kill? Is that voluntary manslaughter? Sudden argument."

10

11

Petition at 16 (quoting 11RT 2067-68).  The Trial Court sustained Petitioner's objection.  *Id.*

12

(citing 11RT 2068).

13

Petitioner contends that the prosecutor's statements misstated the law because "[h]eat of

14

passion can last for hours."  Petition at 17 (citing *People v. Brooks*, 185 Cal. App. 3d 687, 694

15

(1986).  Petitioner contends that by misstating the law, the prosecutor relieved himself of the

16

obligation of having to prove all elements of the offense beyond a reasonable doubt.  *Id.* at 18.

17

On direct appeal, the Court of Appeal held that "[a] prosecutor's intemperate behavior

18

violates the federal Constitution only if it comprises a pattern of conduct so egregious that it infects

19

the trial with such unfairness as to make a conviction a denial of due process."  Court of Appeal

20

Opinion at 27 (quoting *People v. Samayoa*, 15 Cal. 4th 795, 841 (1997) (internal quotations

21

omitted)).  The Court of Appeal then proceeded to conclude that the prosecutor's remarks did not

22

render the trial unfair.  *Id.* at 35.  The Court of Appeal noted that the Trial Court had "instructed the

23

jury before argument and again during the prosecutor's [argument] on the law regarding 'cooling

24

off,'" specifically that "provocation may occur over a short or long period of time."  *Id.* (quoting

25

CALCRIM No. 570).  The Court of Appeal reasoned that in light of "the [Trial] [C]ourt's

26

clarifying instructions during the prosecutor's argument… [the Trial] Court's general instructions

27

28

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

United States District Court
For the Northern District of California

regarding… the law on the cooling off period… and the jury's duty to follow the [trial] court's

instructions… there is no reasonable likelihood that the prosecutor's remarks misled the jury.  *Id*.[7]

　　　　The Court of Appeal's conclusion was not contrary to, nor an unreasonable application of,

federal law.  As set forth in *Darden v. Wainright*, in assessing whether the prosecutor's comments

violated Petitioner's constitutional rights, "[t]he relevant question is whether… [they] 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'" 477 U.S.

168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Here, as

recognized by the Court of Appeal, any potential impact the prosecutor's statements could have

had on the jury was sufficiently mitigated by the Trial Court's instructions, both before and during

the prosecutor's argument, regarding the proper standards in evaluating whether there was

sufficient provocation for Petitioner's actions.  *Cf. Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987)

(holding that where an improper question was followed by an "immediate objection, and two

curative instructions… the prosecutor's improper question did not violate the [Petitioner's] due

process rights").  The Court also notes that, even assuming *arguendo* that the jury was confused as

to the standards for provocation, this confusion did not have a substantial and injurious effect on

the trial such that habeas relief would be warranted because Petitioner was not entitled to the

provocation instruction in the first place.  *See supra*, Section III(B); *Brecht*, 507 U.S. at 637

(holding that, even if constitutional error is found, habeas relief is not warranted unless the

violation in question "had [a] substantial and injurious effect or influence in determining the jury's

verdict").  Thus, the Court of Appeal's decision was neither contrary to, nor an unreasonable

application of, federal law.

　　　　For these reasons, Petitioner's claim for relief based on the prosecutor's misstatement of the

law fails.

---

[7] The Court of Appeal also noted that it "disagree[d] with [Petitioner's] interpretation of the
prosecutor's remarks concerning the cooling off period…."  Court of Appeal Opinion at 35.  To the
extent that the Court of Appeal found that the prosecutor's remarks were not intended as statements
of the law, and would not have been interpreted by the jury as such, this Court agrees.  *See id.*
(noting that the prosecutor explained during sidebar that "[h]e did not mean to imply that the
examples he gave set some type of minimal provocation or maximum cooling off period under the
law").

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

United States District Court
For the Northern District of California

### b.   The Prosecutor's Alleged Misstatements of Fact

Petitioner also argues that the prosecutor misstated the facts in two ways.  Petition at 18.  First, Petitioner contends that the prosecutor's statements that "the provocation consisted of taunting" were not "fair comments on the evidence."  *Id*.  Petitioner contends that in addition to taunting Petitioner, Mr. Reyes "shoved [P]etitioner, displayed his gang bona fides, and challenged [Petitioner] to a fight."  *Id*.  Petitioner's argument fails.  The Court of Appeal found that, in addition to discussing the taunting, the prosecutor stated that Mr. Reyes "pushed the defendant once and challenged him to a fist fight."  Court of Appeal Opinion at 36.  The prosecutor also stated that the provocation consisted of "name calling and one push…."  *Id.*  The Court of Appeal's finding that the prosecutor did not misstate the facts was not an "unreasonable" determination of fact.  28 U.S.C. § 2254(d)(2).  Accordingly, the Court concludes that Petitioner is not entitled to habeas relief on this ground.

Petitioner additionally contends that the prosecutor misstated facts regarding the amount of force that was used in stabbing Mr. Reyes.  Petition at 18.  During trial, the prosecutor's expert forensic medical examiner testified that Mr. Reyes "suffered from two wounds that were three inches deep."  *Id.* at 17 (citing 6RT 1201-02).  However, the expert testified that the amount of force used could not be determined from the wound.  *Id.* (citing 6RT 1202).  Later, the prosecutor argued that the three inch stab wound Mr. Reyes suffered showed intent to commit first degree murder, because "[t]he knife had to go through the jersey and the shirt that [Mr. Reyes] was wearing" and then "[i]n an additional three inches," approximately the full length of the knife.[8]  Court of Appeal Opinion at 37.  Petitioner contends that this argument misstates the facts because it invited the jury to make an "unreasonable inference" about the amount of force used.  Petition at 16-17.

On appeal, the Court of Appeal rejected Petitioner's argument because "the prosecutor's remarks were a fair comment on the evidence."  Court of Appeal Opinion at 38.  This conclusion

---

[8] The prosecutor's argument that three inches was approximately the full length of the knife was based on witness testimony that Petitioner owned a knife with a blade that was approximately three to four inches long.  Court of Appeal Opinion at 37.

26

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

1    was not unreasonable.  As recognized by the Court of Appeal, it was reasonable to infer from the

2    fact that the knife "had traveled through Reyes's clothing, that additional force would be needed to

3    penetrate the clothing." *Id.* at 37.  Moreover, the prosecutor's remarks did not conflict with the

4    expert's testimony because the prosecutor's remarks "did not imply that any particular amount of

5    force was needed to inflict the wounds". *Id.* at 38.  Furthermore, in light of the evidence regarding

6    "the depth and location of the stab wound" it was not improper "for the prosecutor to argue… that

7    [Petitioner] had the intent to kill…." *Id.* at 37.  Accordingly, the Court concludes that Petitioner is

8    not entitled to habeas relief based on the prosecutor's purported misstatements of fact.

9            **c.  Appealing to the Passions of the Jury**

10           Petitioner also contends that the Prosecutor improperly appealed to the passions of the jury

11   by asking the jurors to consider "how [they] would… explain to [a] friend that [they] voted not

12   guilty in this case…." Petition at 17; Court of Appeal Opinion at 38.  This argument was rejected

13   by the Court of Appeal.

14           The Court of Appeal reasoned that the prosecutor's remarks "were not aimed at inciting the

15   passions and prejudices of the jury."  Court of Appeal Opinion at 41.  Rather, they were intended to

16   respond to an argument by defense counsel that "the [jurors] had to have an abiding conviction,"

17   (*i.e.* one that would last for their entire "lifetime") that their decision to convict Petitioner was

18   correct. *Id.*  Accordingly, the prosecutor's comments were not misconduct. *Id.*  The Court of

19   Appeal further reasoned that, even if the prosecutor's statements did imply that the jury should

20   consider public opinion, "any misunderstanding by the jury was remedied" by the Trial Court's

21   instruction to the jury, pursuant to CALCRIM 200, that the jury was "not to allow public opinion to

22   influence [its] decision." *Id.*

23           The Court of Appeal's conclusion was not unreasonable.  The Court agrees that the

24   prosecutor's statements did not invite the jury to consider public opinion, nor did they appeal to the

25   passions or prejudices of the jury.  Moreover, even if they did, in light of the Trial Court's

26   instruction regarding the consideration of public opinion, it is reasonable to conclude that the

27   prosecutor's statement did not infect the trial with unfairness such that reversal would be

28

27

United States District Court
For the Northern District of California

1  warranted.  *See Darden*, 477 U.S. at 181 (holding that in assessing whether the prosecutor's

2  comments violated Petitioner's constitutional rights, "[t]he relevant question is whether… [they]

3  'so infected the trial with unfairness as to make the resulting conviction a denial of due process'");

4  *Cf Cheney v. Washington*, 614 F.3d 987, 997 (9th Cir. 2010) (rejecting Petitioner's ineffective

5  assistance of counsel claim because, "[i]n view of the presumption that the jury properly

6  disregarded the prosecutor's statements in accordance with the curative instruction, it was

7  reasonable for the state court to conclude that the prosecutor's remarks, and counsel's failure to

8  prevent those remarks, were not prejudicial.").  Accordingly, Petitioner's claim fails.

9       Petitioner argues the Court of Appeal's decision conflicts with *Viereck v. United States*, 318

10  U.S. 236 (1943).  Petition at 18-19.  However, *Viereck* is inapposite.  In *Viereck*, the defendant was

11  convicted of three counts of "willful[ly] omi[tting] to state a material fact required to be stated in a

12  supplemental registration statement filed by him with the Secretary of State."  318 U.S. at 237.

13  The court remanded the case to the district court on the grounds that the defendant was not required

14  to make the statements supposedly omitted.  In remanding the case, the court commented that the

15  district court should consider whether certain statements by the prosecutor during closing (e.g.

16  "[t]his is war, harsh, cruel, murderous war" (*id.* at n.3)) prejudiced petitioner's right to a fair trial

17  because their "purpose and effect… could only have been to arouse passion and prejudice."  *Id.* at

18  247.

19       Here, the prosecutor's remarks were intended to address an argument made by defense

20  counsel during closing.  The prosecutor's remarks were not intended to mislead the jury into

21  believing it should consider public opinion, nor were they intended "to arouse passion and

22  prejudice" in the jury.  *Id.*

23       For the reasons set forth above, the Court rejects Petitioner's contention that the

24  prosecutor's statements improperly appealed to the passions of the jury.

25      **d.  Whether Cumulative Misconduct Warrants Reversal**

26       Petitioner also argues that the prosecutor's alleged misstatements regarding the law and the

27  facts and the prosecutor's attempts to improperly arouse the passion or prejudices of the jury, when

28

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

viewed "cumulatively," warrant reversal of Petitioner's conviction.  Petition at 19-20.  As set forth *supra*, the Court of Appeal determined that any misstatement of the law by the prosecutor was remedied by the Court's instructions to the jury and that the prosecutor did not misstate the facts. The Court of Appeal also determined that the prosecutor's statements during closing did not improperly appeal to the passions or prejudices of the jury by encouraging them to consider public opinion, and that, to the extent the prosecutor's statements did encourage the jury to consider public opinion, that error was remedied by the Trial Court's instructions to the jury.  This Court has concluded that the Court of Appeal's determinations on these issues were neither contrary to nor an unreasonable application of Federal law.  Additionally, the Court has concluded that the Court of Appeal's determinations of fact were not unreasonable in light of the evidence.  Accordingly, Petitioner is not entitled to reversal based on the cumulative impact of the prosecutor's purported misconduct.

> ### 5.  Ineffective Assistance of Counsel Based on Defense Counsel's Failure to Object to Prosecutor's Misstatements of the Law

Petitioner's fifth claim for relief is based on ineffective assistance of counsel.  Specifically, Petitioner contends that trial counsel was deficient because she failed to object to certain alleged misstatements by the prosecutor.  Petition at 21-24.  These misstatements include misstatements regarding: (1) whether provocation is measured solely by an objective standard; (2) whether mere words are ever sufficient to show provocation; and (3) the standards for premeditation and deliberation.  *Id.* at 21-22.  The Court will analyze each category of misstatements in turn. However, before engaging in this analysis, it is necessary to review the law governing ineffective assistance of counsel claims.

In order to prevail on a Sixth Amendment ineffectiveness assistance of counsel claim, Petitioner must establish two things.  First, Petitioner must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, Petitioner must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

29

1    would have been different." *Id.* at 694.  A reasonable probability is a probability sufficient to

2    undermine confidence in the outcome.  *Id.*  A court need not determine whether counsel's

3    performance was deficient if the lack of prejudice is clear.  *Id.* at 697.

4         The *Strickland* framework for analyzing ineffective assistance of counsel claims is

5    considered to be "clearly established Federal law, as determined by the Supreme Court of the

6    United States" for purposes of 28 U.S.C. § 2254(d) analysis.  *See Cullen v. Pinholster*, 131 S. Ct.

7    1388, 1403 (2011).  On federal habeas, a petitioner must show that the state court applied

8    *Strickland* to the facts of his case in an objectively unreasonable manner.  *Yarborough v. Gentry*,

9    540 U.S. 1, 5 (2003) (per curiam).  A "doubly" deferential judicial review is appropriate in

10   analyzing ineffective assistance of counsel claims under § 2254.  *See Pinholster,* 131 S.Ct. at 1410-

11   11; *Harrington v. Richter,* 131 S.Ct. 770, 788 (2011) (same); *Premo v. Moore*, 131 S.Ct. 733, 740

12   (2011) (same).  The general rule of *Strickland, i.e.,* to review a defense counsel's effectiveness with

13   great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn

14   "translates to a narrower range of decisions that are objectively unreasonable under

15   AEDPA."  *Cheney,* 614 F.3d at 995(citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

16   When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.  The

17   question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential

18   standard."  *Harrington,* 131 S.Ct. at 788.

19        With this framework in mind, the Court proceeds to analyze Petitioner's claims as to each

20   of the alleged categories of misstatements.

21             **a.  Misstatements Regarding the Standards for Provocation**

22        Petitioner argues that defense counsel's performance was deficient because she failed to

23   object to certain statements by the prosecutor that, Petitioner contends, incorrectly implied that

24   "provocation was judged by how an average person would react."  Petition at 21.  In support of this

25   argument, Petitioner references the prosecutors' statements that: (1) "[b]eing called names is not

26   enough to make our average person act in the way the defendant acted," (*id.* quoting 11RT 2066)),

27   and (2) stating, in response to an analogy presented by defense counsel regarding being cut off in

28

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

1   traffic, that, after being cut-off, "an 'average person' [would not] 'then take out a gun and shoot[]

2   the other person." *Id.* (quoting 12RT 2179).  This Court will refer to these alleged misstatements

3   as the "Provocation Standards Statements."

4       The Court of Appeal rejected Petitioner's ineffective assistance of counsel claim based on

5   defense counsel's failure to object to the Provocation Standards Statements.  *See* Court of Appeal

6   Opinion at 32-33.  The Court of Appeal reasoned that, even assuming defense counsel was

7   deficient in failing to object to the Provocation Standards Statements, Petitioner could not show he

8   suffered prejudice because Petitioner was not entitled to a provocation/heat of passion instruction

9   in the first place.  *Id.*  Petitioner argues that the Court of Appeal's conclusion that Petitioner was

10  not prejudiced by the Provocation Standards Statements should be rejected because the Court of

11  Appeal erred when it determined that there was insufficient evidence to warrant a heat of passion

12  instruction.  Petition at 23.  Petitioner's argument is not persuasive.

13      As set forth *supra*, Section III(B)(2), the Court of Appeal did not err in reaching the

14  conclusion that the evidence was insufficient to warrant a heat of passion instruction.  In light of

15  the fact that Petitioner was not entitled to a heat of passion instruction, it is reasonable to conclude

16  that Petitioner was not prejudiced by the prosecutor's misstatements regarding the standards for

17  provocation.  *See e.g. Kray*, 373 F. App'x at 764 (holding that "[t]he Washington Court of Appeals

18  did not violate Kray's constitutional rights when it ruled that any error in the… self-defense

19  instruction was harmless because Kray was not entitled to a self-defense jury instruction");

20  *Bertman*, 686 F.2d at 775 ("Our review of the record convinces us that Bertman failed to present

21  any evidence whatsoever sufficient to entitle him to an instruction on the defense of coercion.

22  Since he was not entitled to an instruction, the one given, even though erroneous, could only have

23  benefited him.").  Because the Court of Appeal reasonably concluded that Petitioner was not

24  prejudiced by the Provocation Standards Statements, the Court of Appeal's denial of Petitioner's

25  ineffective assistance of counsel claim based on those statements was neither contrary to nor an

26  unreasonable application of federal law governing ineffective assistance of counsel claims as set

27  forth in *Strickland*.  466 U.S. at 694 (holding that, in order to establish an ineffective assistance of

28

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

United States District Court
For the Northern District of California

1   counsel claim, a petitioner must establish that he was prejudiced by counsel's deficient

2   performance).

### b.   Misstatements Regarding Whether Mere Words Are Sufficient to Show Provocation

Petitioner also argues that defense counsel failed to object to several statements by the prosecutor that allegedly suggested to "the jury that mere words were insufficient under the law to constitute provocation." Petition at 21. Petitioner cites several pages from the record in support of this argument. *Id.* (citing 11RT 2055, 2064-66). Having reviewed these pages, the Court was able to identify the following statements by the prosecutor that might be construed as implying that mere words are insufficient to show provocation: (1) "being called names is not enough to make our average person act in the way that defendant acted,"[9] (Answer, Ex. B, at 11RT 2066), (2) "slight or remote provocation is not sufficient... you're a Dave Chapelle crackhead. You're a this. You're a that. Big Deal," (*id.* at 2064), and (3) "the question" is whether "the average person [would] have been provoked and reacted in that situation... in other words, because [of] all the things that the Defendant was called." *Id.* at 2065-66. The Court will refer to these statements as the "Mere Words Statements."

The Court of Appeal rejected Petitioner's claim based on the Mere Words Statements because it concluded that the prosecutor's statements did not imply that mere words were insufficient, as a matter of law, to show provocation. Court of Appeal Opinion at 33. The Court of Appeal held that, in the portions of the record identified by Petitioner, the prosecutor was arguing that "the name calling and one push *in this case* amounted to only slight provocation and was insufficient to support a finding of manslaughter." *Id.* (emphasis added). Petitioner argues that the Court of Appeal's determination was unreasonable. Petition at 23 (arguing that "the state court of appeal found [the Mere Words Statements to be]... a fair comment on the evidence" when they were "not"). The Court disagrees.

As an initial matter, Petitioner's ineffective assistance of counsel claim fails with respect to the first and second statements because defense counsel objected to these statements (*id.* at 2064,

---

[9] The Court notes that this statement was also one of the Provocation Standards Statements.

32

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

United States District Court
For the Northern District of California

2066).  Thus, defense counsel's performance was not deficient as is required to state a claim under *Strickland*.  *See* 466 U.S. at 687-88.

Furthermore, Petitioner's ineffective assistance claim fails with respect to all three Mere Words Statements because, in making these statements, the prosecutor did not imply that California law precludes a finding of provocation based on mere words.  Rather, his arguments were addressed to the name-calling involved in Petitioner's case (*e.g.* "you're a Dave Chapelle crackhead").  Answer, Ex. B, at 11RT 2064.  As recognized by the Court of Appeal, the prosecutor was merely arguing that "the name calling and one push *in this case* amounted to only slight provocation and was insufficient to support a finding of manslaughter."  Court of Appeal Opinion at 33 (emphasis added).

Given that the Mere Words Statements did not misstate the law, Petitioner cannot establish that defense counsel was deficient in failing to object to the third statement, which was the only statement of the Mere Words Statements to which defense counsel did not object.  Moreover, Petitioner cannot establish that any of the statements prejudiced him.  Thus, neither of *Strickland's* requirements are met.  *See* 466 U.S. at 687-88, 694 (setting forth requirements for an ineffective assistance of counsel claim).  The Court of Appeal's rejection of Petitioner's claim based on these statements was therefore neither contrary to nor an unreasonable application of federal law as set forth in *Strickland*.

### c.  Misstatements Regarding the Standards for Premeditation and Deliberation

Finally, Petitioner argues that defense counsel's performance was deficient because she failed to object to certain statements by the prosecutor that Petitioner contends implied that there is an objective standard for determining premeditation and deliberation.  Petition at 21.  Specifically, Petitioner refers to the prosecutor's statements during closing that:

> "It's… not necessary for the People to prove the defendant maturely and meaningfully reflected upon the gravity of his act.  It's just that you thought about what you did before you did it.  You weighed pros and cons, the considerations for and against doing it.  It's not this, you know, mature and meaningful reflection.  If that was the standard, very few people would ever commit first-degree murder.  We like to think that if you really thought, as reasonable people, maturely and meaningfully reflected, you would probably decide not to do it.  That's not the standard here."

33

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

1    *Id.* at 21-22 (quoting 11RT 2054).

2         Defense counsel objected to this statement, and the objection was sustained.  *See* Court of

3    Appeal Opinion at 29.  However, later, during a break in argument, the Trial Court concluded that

4    the prosecutor had not misstated the law.  *Id.*  Defense counsel subsequently argued that the

5    prosecutor's statements regarding premeditation and deliberation constituted misconduct.  *Id.* at 30.

6    However, defense counsel did not request an admonition on this point.  *Id.*  Accordingly, Petitioner

7    argues that defense counsel's performance was deficient.  Petition at 22-23; Court of Appeal

8    Opinion at 30.[10]

9         On direct appeal, the Court of Appeal rejected Petitioner's claim.  Court of Appeal Opinion

10   at 30.  Petitioner contends that in rejecting his claim, the Court of Appeal unreasonably applied

11   controlling federal law.  Petition at 23.  The Court disagrees.

12        As recognized by the Court of Appeal, "it [was] not reasonably likely" that the prosecutor's

13   comments misled the jury as to the proper standard for premeditation and deliberation.  Court of

14   Appeal Opinion at 30.  As an initial matter, the prosecutor did not imply that premeditation and

15   deliberation should be measured by an objective standards as the prosecutor "specifically stated

16   that the reasonable person reflecting maturely and meaningfully was '*not* the standard here.'"  *Id.*

17   (emphasis added).  Furthermore, the Trial Court instructed the jury regarding premeditation

18   pursuant to CALCRIM No. 521.  *Id.*  The Trial Court also advised the jurors that they should

19   follow the standards set forth by the Trial Court, and not any conflicting standards articulated by

20   the attorneys.  *Id.*  As recognized by the Court of Appeal, these instructions likely mitigated any

21   prejudice to Petitioner stemming from the prosecutor's statements regarding premeditation and

22   deliberation.  *See Cheney*, 614 F.3d at 997 ("In view of the presumption that the jury properly

23   disregarded the prosecutor's statements in accordance with the curative instruction, it was

24

25   _____

     [10] In the Petition, Petitioner argues that defense counsel failed to fulfill her "duty to object" to the
26   prosecutor's statements.  Petition at 22.  However, as set forth above, defense counsel did object to
     the prosecutor's statements and that objection was sustained.  Court of Appeal Opinion at 30.  On
27   direct appeal, Petitioner argued that defense counsel's failure to request an admonition was
     "deficient."  *Id.*  Thus, for the purposes of the present Petition, the Court construes Petitioner's
28   claim as a claim that trial counsel was deficient in failing to request an admonition.

                                                       34
     Case No.: 5:11-CV-03294-LHK
     ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
     OF APPEALABILITY

reasonable for the state court to conclude that the prosecutor's remarks, and counsel's failure to prevent those remarks, were not prejudicial."). Given that the prosecutor's statements did not prejudice Petitioner, the Court of Appeal's rejection of Petitioner's ineffective assistance of counsel claim based on those statements was neither contrary to nor an unreasonable application of *Strickland*. *See* 466 U.S. at 694 (setting forth prejudice requirement).

Petitioner also argues that the Court of Appeal's decision should be rejected because the Court of Appeal misunderstood the "nature of the" harm with respect to the prosecutor's statements regarding premeditation and deliberation. Petition at 23. Petitioner argues that the harm "was [the prosecutor's] explaining to the jury that in determining if the offense was manslaughter, provocation's objective test was what a reasonable person would do." *Id.* As noted by the Court of Appeal, the prosecutor was stating that the standard was *not* "what a reasonable person reflecting maturely and meaningfully" would do. Court of Appeal Opinion at 30. Thus, the prosecutor's statements could not possibly have implied that the standards for premeditation and deliberation or the standard for provocation were "what a reasonable person would do." Petition at 23. Accordingly, the Court rejects Petitioner's argument.

For the reasons set forth above, the Court concludes that Petitioner is not entitled to habeas relief based on defense counsel's failure to object to the prosecutor's statements concerning premeditation and deliberation.

### 6. Ineffective Assistance of Counsel Based on Defense Counsel's Failure to Make an Adequate Offer of Proof

#### a. Petitioner's Claim

Petitioner's sixth claim for relief alleges that defense counsel provided ineffective assistance of counsel because she failed "to make an adequate offer of proof for the admission of petitioner's statements to police." Petition at 25. Pursuant to California Evidence Code § 354, in order for a defendant's verdict "to be set aside... [or] reversed[] by reason of the erroneous exclusion of evidence," a trial court must have been advised of "[t]he substance, purpose, and relevance of the excluded evidence... by the questions asked... [or] an offer of proof..." *Id.* This "offer of proof... give[s] the trial court an opportunity to change or clarify its ruling and[,] in the

35

event of appeal… provide[s] the reviewing court with the means of determining error and assessing prejudice." *People v. Schmies*, 44 Cal. App. 4th 38, 53 (1996).

In this case, Petitioner contends that Dr. Froming's testimony was based, in part, on Petitioner's statements to the police, and that, due to defense counsel's failure to make an adequate offer of proof concerning the content of Petitioner's statements, the judge refused to admit the statements. Petition at 25. Accordingly, Petitioner argues that the jury was unable "to properly consider Dr. Froming's expert testimony on the issue of whether petitioner lacked the specific intent to commit murder." *Id.*

### b. Background

Before proceeding to the merits of Petitioner's claim, the Court will briefly discuss the background regarding the exclusion of Petitioner's statements to police. During Petitioner's interview with the police following his arrest, Petitioner made a number of statements he now contends should have been admitted at trial. Petitioner's statements fall primarily into two categories: (1) statements that when Petitioner went to Mr. Miller's home, Mr. Reyes and his friends "rushed" Petitioner carrying weapons, which included a gun and a knife or sword, and that Petitioner was scared at the time of the murder (*see e.g.* Petition, Ex. D ("State Habeas Petition"), Ex. A. ("Transcript of Police Interview") at 12:8-14, 15:19-23, 18:13-14, 19:27-:20:17, 52:23), and (2) statements indicating that Petitioner feared that Mr. Reyes's friends would harm Petitioner or his mother. *See e.g. id.* at 27:19-23, 29:12, 30:4-25, 50:7-11.

Prior to trial, defense counsel brought a motion in limine requesting that Petitioner's statements to the police be admitted as circumstantial evidence of Petitioner's state of mind. Court of Appeal Opinion at 6. However, the only statements defense counsel specifically identified in Petitioner's motion in limine were Petitioner's statements that "he felt threatened by the Norteño group" (Mr. Reyes was a Norteño). *Id.* at 2, 6. Defense counsel also brought a motion in limine to introduce Petitioner's statements to the police as evidence that "the police were biased" against the Petitioner. *Id.* at 7. The only statements defense counsel specifically identified in the motion were

36

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

1  Petitioner's statements of concern regarding the possibility that Norteño gang members would

2  harm his mother.  *Id.*

3       Later, during a hearing under California Evidence Code Section 402 to determine the

4  admissibility of certain evidence, the prosecutor requested that Dr. Froming, whose expert opinion

5  was based in part on her review of Petitioner's police interview, be prohibited from testifying

6  regarding any of Petitioner's statements to the police.  *Id.* at 7-8.  In addressing the prosecutor's

7  arguments about whether Dr. Froming should be permitted to testify concerning Petitioner's

8  statements to the police, defense counsel again failed to specifically identify any of the statements.

9  Answer, Ex. B, 4RT 960-61.  The Trial Court ultimately ruled that Dr. Froming would be

10  prohibited from testifying regarding Petitioner's statements to the police.  Court of Appeal Opinion

11  at 8; Answer, Ex. B, 4RT 961.  Petitioner contends that defense counsel's failure to make a better

12  offer of proof concerning the contents of Petitioner's statements to the police constitutes ineffective

13  assistance of counsel.  Petition at 25.

14       **c.  Analysis**

15       As stated *supra*, Section III(B)(5), in order to prevail on a Sixth Amendment ineffective

16  assistance of counsel claim, Petitioner must establish two things.  First, Petitioner must establish

17  that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of

18  reasonableness" under prevailing professional norms.  *Strickland*, 466 U.S. at 687-88.  Second, he

19  must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a

20  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

21  would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to

22  undermine confidence in the outcome.  *Id.*

23       Petitioner's ineffective assistance of counsel claim was first considered by the Court of

24  Appeal on direct appeal.  Court of Appeal Opinion at 6.  The Court of Appeal rejected Petitioner's

25  claim because there was no evidence in the record concerning the contents of Petitioner's

26  statements to the police (*id.* at 10)[11], an absence which was likely due to defense counsel's failure

27  ───────────

[11] The Court of Appeal did note that,"[i]n [Petitioner's] reply brief, [Petitioner] purportedly

28  identifie[d] for the first time the statements that he believes should have been admitted."  Court of

37

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

*United States District Court*
*For the Northern District of California*

1   to make an adequate offer of proof.  *See Schmies*, 44 Cal. App. 4th at 53 (noting that, in the event

2   of an appeal, the "offer of proof… provide[s] the reviewing court with the means of determining

3   error and assessing prejudice").  The Court of Appeal reasoned that "[s]ince the appellate record

4   does not disclose what evidence was omitted" as a result of defense counsel's failure to make an

5   adequate offer of proof, "it provides no basis for concluding that counsel's performance, even if

6   deficient, caused prejudice."  Court of Appeal Opinion at 11 (internal quotation marks omitted).

7       Petitioner raised his claim again in his habeas petition to the California Supreme Court.

8   Petition, Ex. D ("State Habeas Petition") at 15.  In his State Habeas Petition, Petitioner provided

9   details regarding the substance of the excluded statements.  *See Id.* at 18-19, 25-26.  The California

10  Supreme Court nevertheless summarily rejected Petitioner's claim.  *See* Petition, Ex. E.

11  Accordingly, the only reasoned opinion is the Court of Appeal Opinion.

12      The Court of Appeal's dismissal of Petitioner's claim could be viewed as a finding that the

13  evidence was not sufficient to show Petitioner suffered prejudice as a result of the omission of the

14  statements, a requirement for an ineffective assistance of counsel claim.  Thus, the Court of

15  Appeal's dismissal was arguably a reasoned decision either on the merits to the extent the Court of

16  Appeal held that there was insufficient evidence to show ineffective assistance of counsel.  On the

17  other hand, the Court of Appeal's decision might arguably be viewed as based on a state procedural

18  bar to the extent the Court of Appeal rejected Petitioner's claim on the grounds that no adequate

19  offer of proof had been made regarding the content of the omitted statements.  *See* Court of Appeal

20  Opinion at 11 (stating that "an offer of proof exists for the benefit of the appellate court" and

21

22  Appeal Opinion at 11 n. 8.  "Specifically, [Petitioner] stated to the police 1) that he was afraid, 2)
    that he was afraid to have his name written in the police paperwork because the people he
23  confronted were from West Side Mob, a Norteño gang, and 3) the video showed [Petitioner] in a
    near fetal position audibly moaning and crying even after the officers left the room, though
24  [Petitioner] was unaware he was being videotaped."  *Id.*  With respect to the third category, the
    Court noted that any exclusion was harmless "because the trial court admitted video and audio
25  excerpts showing appellant moaning and crying balled up the fetal position."  *Id.*  As to the first
    two categories, the Court appears to have disregarded the statements because the statements were
26  not Petitioner's "actual statements," but rather summaries of Petitioner's statements offered by the
    attorneys in the case.  *Id.*  (stating that "our review of the record reveals that these were not
27  appellant's actual statements, rather they were the District Attorney's and trial counsel's
    interpretation of what [Petitioner] said").

28

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   rejecting, because defense counsel failed to make an offer of proof, Petitioner's claims based on the

2   Trial Court's refusal to admit the omitted statements); *see also Williams v. Sisto*, No. C 07-05342

3   CW., 2010 WL 530086, at *8 (N.D. Cal. Feb. 8, 2010) ("The procedural bar here arises from

4   California Evidence Code Section 354... California Evidence Code Section 354 is an adequate and

5   independent state procedural rule").  However, it would be somewhat ironic to reject Petitioner's

6   ineffective assistance of counsel claim where the lack of evidence before the Court of Appeal was

7   due to the very deficiency of which Petitioner complains (*i.e.* defense counsel's alleged failure to

8   make an adequate offer of proof).  This result seems unfair where, as in this case, Petitioner has

9   provided evidence regarding the content of the statements at issue to both the California Supreme

10   Court and this Court.  Accordingly, this Court will analyze whether Petitioner may be entitled to

11   relief in light of the content of the disputed statements.  This Court however concludes that he is

12   not.

13          Even considering the content of the omitted statements, Petitioner cannot show he was

14   prejudiced by defense counsel's inadequate offer of proof.  *See Strickland*, 466 U.S. at 687

15   (holding that, in order to prevail on a claim for ineffective assistance of counsel, a defendant must

16   show prejudice).  The omitted statements consist primarily of: (1) statements by Petitioner that

17   when Petitioner went to Mr. Miller's home, Mr. Reyes and his friends "rushed" Petitioner carrying

18   weapons, which included a gun and a knife or sword, and (2) statements indicating that Petitioner

19   feared that Mr. Reyes's friends would harm Petitioner or his mother.  Petition at 27-28.  Petitioner

20   also notes that the transcript of Petitioner's interview with police showed that the police tried to

21   calm Petitioner numerous times because Petitioner was unusually emotional.  *Id.* at 28.  Dr.

22   Froming interpreted Petitioner's statements and conduct as evidence that Petitioner was

23   "hypomanic," "extraordinarily fearful and paranoid," "inaccurately interpret[ing] events," and

24   "approaching a delusional state."  *Id.* at 27-28; Petition, Ex. D (Declaration of Karen Froming).

25          Petitioner contends that prejudice exists because, if his statements to the police had been

26   admitted, they would have helped Dr. Froming "explain[] in concrete terms how she arrived at her

27   conclusions."  Petition at 32.  Petitioner further argues that if an adequate offer of proof had been

28

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

1    made and if Dr. Froming had been permitted to testify regarding Petitioner's statements to the

2    police, the Trial Court would have given more credit to Dr. Froming's testimony and would not

3    have prohibited its consideration for the purposes of provocation. *Id.* Petitioner also argues that

4    the Trial Court would have found that an imperfect self-defense instruction was warranted. *Id.*

5    Finally, Petitioner argues that, had the jury been aware of the basis for Dr. Froming's testimony

6    (*i.e.* Petitioner's statements to the police), it would have been more likely to accept Dr. Froming's

7    conclusions. *Id.* The Court disagrees.

8         With respect to the issues of provocation and heat of passion, as explained *supra* Section

9    III(B)(1) and III(B)(2), there was insufficient evidence that Mr. Reyes's calling Petitioner names

10   and pushing Petitioner, would have "arouse[d] the passions of the ordinarily reasonable person" (an

11   issue which Dr. Froming's testimony did not address). Court of Appeal Opinion at 15 (quoting

12   *Padilla*, 103 Cal.App.4th at 679). Accordingly, Petitioner was not entitled to a heat of passion

13   instruction in the first instance. Thus, even assuming Petitioner's statements to the police would

14   have bolstered Dr. Froming's testimony[12], Petitioner was not prejudiced as he was not even entitled

15   to a provocation/heat of passion instruction. *Cf. Kray*, 373 F. App'x at 764 (holding that error in

16   jury instruction was harmless where defendant was not entitled to the instruction in the first place);

17   *Bertman*, 686 F.2d at 775 (same).

18        Similarly, as set forth *supra* Section III(B)(3), the evidence overwhelmingly supported the

19   conclusion that Petitioner did not act in imperfect self-defense. Indeed, Petitioner does not contest,

20   that: (1) it was Petitioner who knocked on Mr. Miller's door; (2) after Petitioner knocked on the

21   door, Mr. Reyes walked from the back bedroom holding a cell phone; or (3) after Mr. Reyes came

22   out of the bedroom, Petitioner moved "quickly into the apartment" and stabbed Mr. Reyes. *See*

23   Petition at 2; Court of Appeal Opinion at 3; Answer, Ex. B, 5RT 986. Petitioner also does not

24   contest that it was not until after the stabbing that "the men rushed out of the bedroom." Petition at

25   2; Court of Appeal Opinion at 3; Answer, Ex. B, 5RT 986. In light of these facts, the Court

26

27   ──────────────
     [12] As will be discussed further below, at best Petitioner's statements would have provided minimal
     additional support to Dr. Froming's opinion.

28                                                           40

     Case No.: 5:11-CV-03294-LHK
     ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
     OF APPEALABILITY

1   concludes that even if the statements had been admitted to bolster Dr. Froming's testimony, there is

2   not a "reasonable probability" that the result in Petitioner's case would have been different with

3   respect to the issue of imperfect self-defense.  *Strickland*, 466 U.S. at 694.

4          Furthermore, the Court concludes that the omitted statements would have lent, at best,

5   minimal additional credibility to Dr. Froming's testimony.  For example, Dr. Froming construed

6   Petitioner's statement that he was rushed by the group of men and that the men were holding

7   weapons as evidence that Petitioner was misperceiving events at the time of the murder.  However,

8   Petitioner's statements could also be construed as self-serving lies told to the police to justify

9   Petitioner's actions.

10         Similarly unhelpful are Petitioner's statements that he was concerned that Mr. Reyes's

11  friends were gang members, and that they might hurt Petitioner or his mother.  *See e.g.* Transcript

12  of Police Interview at 27:19-23, 29:12, 30:4-25, 50:7-11.  Petitioner argues these statements

13  support Dr. Froming's conclusions that Petitioner "was influenced by paranoia during the incident[

14  and]… after the incident" (Petition at 27), and that Petitioner was "overloaded with information[

15  and] misterpret[ing] events."  *Id.* at 28.  However, Petitioner's statements are also consistent with

16  an effort by Petitioner to make himself seem like a victim.  *See* Transcript of Police Interview at 31

17  ("Q: You're worried about your mom, you can't tell me why you're worried about your mom.

18  A:… [Y]ou guys are like making me feel like the bad person... I'm not the bad person.  Q: I'm

19  trying to understand you.  A: I didn't do anything wrong… I'm not that kind of person….").

20         Likewise, while Petitioner's emotional state at the time of the police interview might be

21  construed as evidence of the mental impairments identified by Dr. Froming, Petitioner's emotional

22  state is arguably consistent with the reaction of an unimpaired individual who has just been

23  involved in a stabbing and arrested on murder charges.  Indeed, the police officer conducting the

24  interview noted that Petitioner's being upset was likely due to the fact that Petitioner had just

25  stabbed someone.  *See* Transcript of Police Interview at 29:27-30:3 ("Q: Have you ever stabbed

26  anyone before? A: No man… Q:... [B]ut you did tonight and that's why… you're upset.").

27  Moreover, the jury already had some direct evidence of Petitioner's emotional state because the

28
                                            41
    Case No.: 5:11-CV-03294-LHK
    ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
    OF APPEALABILITY

United States District Court
For the Northern District of California

1  "the trial court admitted video and audio excerpts showing appellant moaning and crying[, while]

2  balled up [in] the fetal position."  Court of Appeal Opinion at 11 n. 8.

3  　　　　In light of the multiple conclusions that may be drawn from Petitioner's statements to the

4  police, the Court cannot conclude that the omitted statements would have added sufficient

5  additional credibility to Dr. Froming's opinion such that "there is a reasonable probability that…

6  the result of the proceeding would have been different" had the statements been admitted.

7  *Strickland*, 466 U.S. at 694.

8  　　　　For the reasons set forth above, the Court concludes that Petitioner was not prejudiced by

9  the exclusion of his statements to the police.  *Id.* (holding that, to prevail on an ineffective

10  assistance of counsel claim, a petitioner must show there is not "a reasonable probability that, but

11  for counsel's unprofessional errors, the result of the proceeding would have been different").[13]  The

12  decisions of the Court of Appeal and the California Supreme Court denying Petitioner's claim were

13  therefore neither contrary to nor an unreasonable application of *Strickland*.  Accordingly,

14  Petitioner's claim for relief based on Defense Counsel's failure to make an adequate offer of proof

15  concerning Petitioner's statements to the police fails.

16  　　　　**7.  Cumulative Prejudice**

17  　　　　Petitioner argues that, even if no individual error requires reversal, Petitioner should be

18  granted reversal because the cumulative effect of the errors "rise[s] to the level of a due process

19  violation."  Petition at 34 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996)).  The Court of

20  Appeal concluded that "[n]o serious errors occurred, which whether viewed individually or in

21  combination, could possibly have affected the jury's verdict."  Court of Appeal Opinion at 42.

22  This Court agrees.  While there may have been some errors in Petitioner's case (*e.g.* the Trial

23  Court's instruction that the jury could not consider Dr. Froming's testimony for in connection with

24  the issue of whether Petitioner acted in the heat of passion), these errors were harmless and, even

---

25

26  [13] Respondent argues that Petitioner fails to satisfy the prejudice prong of the *Strickland* test for the additional reason that the statements were not admissible, and therefore, their exclusion did not improperly harm Petitioner.  Answer at 42-45.  Because the Court concludes that there is not a reasonable probability that the result of these proceedings would have been different even if Petitioner's statements had been admitted, the Court need not address this issue.

27

28

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

United States District Court
For the Northern District of California

considered cumulatively, they do not warrant reversal.  Accordingly, Petitioner's claim based on the cumulative errors must be denied.

**IV. CONCLUSION**

As set forth above, Petitioner's Petition for Habeas Corpus is DENIED.  A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.  The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  November 2, 2012



LUCY H. KOH
United States District Judge

Case No.: 5:11-CV-03294-LHK
ORDER DEYNING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

*(left margin, vertical text)* United States District Court
For the Northern District of California